United States District Court
Southern District of Texas
**ENTERED**
September 30, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RADLEY BRADFORD, individually, and on behalf of all others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:23-CV-03659 |
| COMCAST CABLE COMMUNICATIONS, LLC, | § § § | |
| Defendant. | § § | |

## ORDER

Before the Court are Plaintiff Radley Bradford's Second Amended Class Action Complaint (the "Amended Complaint") (Doc. #34), Defendant Comcast Cable Communications, LLC's Motion to Dismiss (Doc. #35), Plaintiff's Response (Doc. #37), and Defendant's Reply (Doc. #38). Having considered the parties' arguments, submissions, and the applicable legal authorities, the Court grants in part the Motion to Dismiss.

### I. Background

#### a. Factual Background

Plaintiff Radley Bradford ("Plaintiff") was a participant in the Affordable Connectivity Program (the "ACP"), which is a federally funded program that subsidizes cellular and internet services for low-income individuals. Doc. #34 ¶¶ 8, 9. Defendant Comcast Cable Communications, LLC ("Defendant") is a participating vendor in the ACP and offers benefits through a product called "Xfinity Essentials." Id. ¶ 11. The ACP does not precondition benefits on an individual's credit score. Id. ¶ 10. In early 2022, Plaintiff was receiving ACP benefits through AT&T. Id. ¶ 12. On January 11, 2023, Plaintiff contacted Defendant to inquire about the

1

Xfinity Essentials program. *Id.* ¶ 13. During the phone call, Defendant's representative requested Plaintiff's social security number ("SSN"). *Id.* ¶ 14. Plaintiff claims he was hesitant to provide his SSN, only doing so after being assured that Defendant "would not pull his credit report." *Id.* ¶¶ 15, 16. However, in the following week, Plaintiff alleges that Defendant accessed Plaintiff's credit report on three separate occasions. *Id.* ¶ 18.

### b. Procedural Background

On September 28, 2023, Plaintiff filed his Original Class Action Complaint, alleging that Defendant violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f), by accessing his credit report without his authorization or a permissible purpose. Doc. #1 ¶¶ 23, 62. Plaintiff seeks damages for the anxiety, distress, and mental anguish he claims to have suffered because of Defendant's conduct, which led him to "fear he may be a victim of identity theft." *Id.* ¶ 34. Plaintiff alleges that Defendant engages in a "systemic practice" of maliciously violating the FCRA and seeks to represent a class of all individuals similarly situated. *Id.* ¶¶ 39, 72(a).

On July 31, 2024, the Court granted Defendant's Motion to Dismiss, finding that this Court lacked subject-matter jurisdiction over his claims because Plaintiff had failed to allege a concrete injury that would give him standing to sue. Doc. #28 at 7. However, the Court granted Plaintiff leave to amend his complaint to address the deficiencies identified in the Order. *Id.*

Plaintiff filed his Amended Complaint, which is the live pleading, on September 27, 2024. Doc. #34. Plaintiff continues to assert the same causes of action under the FCRA but now includes additional factual allegations. *See id.* Specifically, Plaintiff alleges, with greater particularity, that Defendant accessed his SSN, debts, payment history, employment information, and other financial data without his consent. *Id.* ¶ 37. Defendant again moves to dismiss Plaintiff's Amended Complaint based on two legal theories: (1) lack of subject-matter jurisdiction under Federal Rule

2

of Civil Procedure 12(b)(1) and (2) failure to state a claim upon which relief may be granted under Rule 12(b)(6). Doc. #35.

## II.     Legal Standards

### a.    Federal Rule of Civil Procedure 12(b)(1)

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction tests the court's statutory or constitutional power to adjudicate the case." *Wesolek v. Layton*, 871 F. Supp. 2d 620, 627 (S.D. Tex. 2012) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). District courts may dismiss a case for lack of subject-matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). "The burden of proof for a [Rule] 12(b)(1) motion to dismiss is on the party asserting jurisdiction, and, at the pleading stage, the plaintiff's burden is to allege a plausible set of facts establishing jurisdiction." *Haverkamp v. Linthicum*, 6 F.4th 662, 668 (5th Cir. 2021) (cleaned up). Moreover, "all well-pleaded facts are taken as true and all reasonable inferences must be made in the plaintiff's favor." *Id.* at 668–69.

### b.    Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint need not contain 'detailed factual allegations'; rather, it need only allege facts sufficient to 'state a claim for relief that is plausible on its face.'" *Littell v. Hou. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

3

"Significantly, a complaint may proceed even if 'recovery is very remote and unlikely,' so long as the alleged facts 'raise a right to relief above the speculative level.'" *Littell*, 864 F.3d at 622 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In evaluating the complaint, the Court takes "the well-pleaded factual allegations in the complaint as true" but does "not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). Additionally, courts may "consider documents attached to the Rule 12(b)(6) motion 'that are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Allen v. Hays*, 812 F. App'x 185, 189 (5th Cir. 2020) (quoting *Sullivan v. Leor Energy, L.L.C.*, 600 F.3d 542, 546 (5th Cir. 2010)).

## III.    Analysis

First, some background on the FCRA is in order. "The FCRA was the product of Congressional concern over abuses in the credit reporting industry." *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir. 1989). The legislative history of the statute reveals two broad goals. The first was to "protect an individual from inaccurate or arbitrary information . . . in a consumer report . . . ," which is the subject of most FCRA litigation. *Id.* (quoting *Pinner v. Schmidt*, 805 F.2d 1258, 1261 (5th Cir.1986)). The second was, as relevant here, "to establish credit reporting practices that utilize . . . information in a confidential and responsible manner." *Id.* (quoting *Hovater v. Equifax, Inc.*, 823 F.2d 413, 417 (11th Cir. 1987)). The statute permits civil actions against individuals who "fail[] to comply with any requirement" it imposes. 15 U.S.C. §§ 1681n(a), 1681o(a).

Plaintiff's Amended Complaint centers primarily on the second goal of the FCRA—the confidentiality interests protected under the statute. "The FCRA was designed to ensure that, once a consumer reporting agency collected information on a person related to their credit eligibility,

4

the information could only be released for certain purposes and in a certain manner." *St. Paul Guardian Ins. Co.*, 884 F.2d at 885 n.3. It thus permits credit reporting agencies to release such information only when sought for a "permissible purpose," an exhaustive list of which are outlined in the statute. *See* 15 U.S.C. § 1681b(a). Plaintiff claims Defendant had no permissible purpose for accessing his credit report. Doc. #34 ¶¶ 69–70. Defendant disagrees and now moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. #35. The Court will first address Defendant's jurisdictional challenges under 12(b)(1) before considering the merits of Plaintiff's claims under Rule 12(b)(6). *See In re GenOn Mid-Atl. Dev., L.L.C.*, 42 F.4th 523, 533 (5th Cir. 2022) ("[j]urisdiction comes first").

### a. Rule 12(b)(1) Motion to Dismiss

Defendant argues the Court lacks subject-matter jurisdiction because Plaintiff lacks standing to sue. Doc. #35 at 8–13. To establish standing at the motion-to-dismiss stage, a plaintiff must plausibly allege "(1) an 'injury in fact,' (2) that is 'fairly…trace[able] to the challenged action of the defendant,' and (3) that is 'likely . . . redress[able] by a favorable decision.'" *Ghedi v. Mayorkas*, 16 F.4th 456, 464 (5th Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The dispute here concerns the first element of Article III standing—whether Plaintiff has suffered a concrete injury. Plaintiff may establish injury by identifying "a close historical or common-law analogue for [his] asserted injury." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Here, Plaintiff analogizes his FCRA claim to the common-law tort of intrusion upon seclusion. Doc. #37 at 7. The Supreme Court recently held in *TransUnion* that injuries analogous to intrusion upon seclusion could suffice as "concrete" even without tangible harm. 594 U.S. at 425 (citing *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020)). Moreover, courts have

previously found the interests protected by the FCRA to be analogous to those implicated by intrusion upon seclusion. *See Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 874 (W.D. Tex. 2016) (collecting cases).

Plaintiff's case is no different. Congress passed the FCRA to "[e]nsure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4); *see also Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) ("Congress enacted FCRA in 1970 to . . . protect consumer privacy"). Likewise, intrusion upon seclusion exists to vindicate one's interest in "solitude or seclusion of . . . his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 826 (5th Cir. 2022) (citing Restatement (Second) of Torts § 652B (1977)).

Defendant contends that Plaintiff is nonetheless uninjured because it only accessed information in the public record, meaning no privacy interest was implicated. Doc. #35 at 13. The Court is unpersuaded. First, Plaintiff alleges that more than public-record information was accessed, including his debts, payment history, and employment information. Doc. #34 ¶ 37. Moreover, Plaintiff alleges that he was merely inquiring about the Xfinity Essentials program, not applying for its benefits. *Id.* ¶ 13. Furthermore, Defendant offers no explanation for proceeding without Plaintiff's consent. At this stage, the Court finds plausible Plaintiff's allegation that Defendant invaded a privacy interest protected by the FCRA.

In assessing whether Plaintiff's alleged injury is analogous to the common-law tort of intrusion upon seclusion, the Court looks for a "'close relationship' in kind, not degree." *Perez*, 45 F.4th at 822 (quoting *Gadelhak*, 950 F.3d at 462). Even if only limited information was obtained, "both the common law and the literal understandings of privacy encompass the

6

individual's control of information concerning his or her person." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989). Plaintiff alleges that he expressly sought assurance that his credit report would not be accessed, yet Defendant accessed it on three occasions despite this alleged instruction. Doc. #34 ¶¶ 15–17, 22, 28.

Thus, the Court is satisfied that Plaintiff's asserted injury is akin to the "types of harms protected at common law," and sufficient to satisfy the injury-in-fact requirement of Article III. *Perez*, 45 F.4th at 822 (quoting *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 693 (5th Cir. 2021)). Furthermore, the Court finds that Plaintiff has plausibly alleged that his injury is traceable to Defendant's actions in initiating the credit inquiries. Finally, the Court finds that Plaintiff's injury would likely be redressed by the FCRA's statutory remedies. Accordingly, the Court finds that Plaintiff's claims survive Defendant's Motion to Dismiss for lack of subject-mater jurisdiction.

### b. Rule 12(b)(6) Motion to Dismiss

Turning to the merits, Defendant argues that Plaintiff has failed to state a plausible claim for relief on two grounds: (1) Defendant had a permissible purpose for accessing Plaintiff's consumer report, and (2) Plaintiff has failed to establish his entitlement to damages. Doc. #35 at 11–21. The Court will address each argument in turn.

### 1. Permissible Purpose

First, Defendant argues that it had a permissible purpose for accessing Plaintiff's credit report because it had a "legitimate business need for the information." Doc. #35 at 14. Specifically, it posits that verifying Plaintiff's identity, and thus his eligibility for its services, constitutes a "legitimate business need" under the FCRA. *Id.* In support, Defendant attaches to its Motion to Dismiss an affidavit explaining the credit inquiries made on Plaintiff's account. Doc.

7

#35, Ex. 1. Typically, a court does not look outside the pleadings in reviewing a motion to dismiss. However, a court may consider documents that a defendant attaches to a motion to dismiss, if the documents are "referred to in the plaintiff's complaint and are central to [the] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *see also Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 926 (N.D. Tex. 2014). Here, Plaintiff refers to the inquiries made into his consumer report, and those inquiries are clearly central to his claims. *See* Doc. #34 ¶ 18. Therefore, the Court will consider the affidavit in evaluating Defendant's Rule 12(b)(6) motion.

Here, neither party disputes that Defendant accessed Plaintiff's credit report on three separate occasions on three separate days. Doc. #34 ¶ 18.; Doc. #35, Ex. 1 ¶ 3. Furthermore, Defendant's own affidavit shows that it not only made duplicative inquiries, but it also made multiple types of inquiries. Doc. #35, Ex. 1 ¶ 3. First, Defendant made a "DTEC Inquiry"[1] on January 11, 2023, which provided general identifying information, as well as Plaintiff's age and employment. *Id.* ¶¶ 3–4. Next, Defendant requested an "ID Report" on January 13, 2023, and again on January 17, 2023. *Id.* Those second and third inquiries appear to request only "extremely limited identity information" expected of an identity verification inquiry. *Id.* ¶ 4. Defendant does not explain why it conducted three credit inquiries of varying scope, or why an inquiry into Plaintiff's employment history was necessary when Plaintiff merely inquired into Xfinity Essentials and explicitly instructed that his credit report not be accessed. *See id.*

Defendant insists it had a "legitimate business need" for these inquiries. Doc. #35 at 14. However, the breadth of information Defendant accessed in response to Plaintiff's limited request, despite Plaintiff's express lack of consent, raises a factual question as to whether the credit

---

[1] A "DTEC Inquiry" enables customers to search the Equifax national consumer database by inputting only a consumer's 9-digit SSN. Doc. #35, Ex. 1 ¶ 4. A DTEC inquiry returns consumer identity information, including age and employment. *Id.*

inquiries were made for a permissible purpose. Such factual questions are not properly resolved at the motion-to-dismiss stage. *See Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014).

### 2. Damages

Next, Defendant argues that Plaintiff's FCRA claim fails as a matter of law because he has failed to allege his entitlement to damages. Doc. #35 at 17. "The FCRA imposes civil liability on 'any person' who willfully or negligently fails to comply with its requirements." *Attridge v. Colonial Sav. F.A.*, No. 5:20-CV-00205, 2023 WL 6444894, at *3 (W.D. Tex. Sept. 28, 2023) (quoting 15 U.S.C. §§ 1681n, 1681o). A willful violation allows a plaintiff to recover actual or statutory damages, as well as punitive damages and attorney's fees. *Id.* A negligent violation allows recovery of actual damages and attorney's fees. *Id.* In his Amended Complaint, Plaintiff alleges both negligent and willful violations. Doc. #34 ¶¶ 69,70. The Court will address each theory of liability in turn.

### i.  Negligent Noncompliance with the FCRA

Plaintiff first alleges negligent noncompliance, which, if proven, would entitle him to actual damages and attorney's fees. Doc. #34 ¶ 70. An FCRA plaintiff can recover on a negligence theory of liability only if they can prove they suffered actual damages. *Bacharach v. Suntrust Mortg., Inc.*, No. CIV.A. 14-962, 2015 WL 6442493, at *3 (E.D. La. Oct. 23, 2015), *aff'd*, 827 F.3d 432 (5th Cir. 2016). Having spent "hours monitoring his credit reports," Plaintiff seeks to establish actual damages through his alleged "fear that he may be a victim of identity theft," which he claims caused him "anxiety, distress, [and] mental anguish." Doc. #34 ¶¶ 34–35. For the same reasons explained in this Court's previous Order, those allegations remain too speculative to survive a motion to dismiss. *See* Doc. #28; *Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level"). Accordingly, Plaintiff's

9

negligence theory cannot proceed, and his claims only survive if he sufficiently alleges that Defendant's conduct was willful.

### ii.   Willful Noncompliance with the FCRA

Next, Plaintiff seeks to recover for willful noncompliance, which would entitle him to statutory damages, as well as punitive damages and attorney's fees.  Doc. #34 ¶ 69.  Defendant argues that Plaintiff has not plausibly alleged willfulness.  Doc. #35 at 17.  Under the FCRA, a defendant's conduct is "willful" when done "knowingly and with reckless disregard." *Okwo v. Houston Methodist the Woodlands*, No. 4:21-CV-04063, 2022 WL 1644453, at *6 (S.D. Tex. May 24, 2022).  The Fifth Circuit recently held that an FCRA plaintiff must plead "sufficient facts" beyond a mere "headnote for the entire dispute" to support a willful violation claim.  *Schultz v. HomeBridge Fin. Servs., Inc.*, No. 24-50193, 2025 WL 1467431, at *3 (5th Cir. May 22, 2025); *see also Billups v. Retail Merchants Ass'n, Inc.*, 620 F. App'x 211, 213 (5th Cir. 2015) (holding that "[i]n merely reciting the legal standard" for willfulness, FCRA plaintiff's claim "falls squarely in the ambit of 'conclusory statements' held to be insufficient in *Iqbal*").

Here, Plaintiff alleges that Defendant "systemically accesses consumers' credit reports . . . without a permissible purpose prescribed by the FCRA."  Doc. #34 ¶¶ 41, 42.  As evidence of this allegedly "willful and malicious" FCRA violation, Plaintiff points to the multiple credit inquiries, of varying scope, without his consent.  *Id.* ¶¶ 28, 42; Doc. #35, Ex. 1 ¶ 4.  As pleaded, the Court finds that these allegations, if true, "provide[] enough facts to create a reasonable expectation that discovery will produce further evidence tending to establish" the willfulness of Defendant's conduct.  *Staten v. City of D'Iberville*, No. 1:13-CV-00212, 2013 WL 12575811, at *2 (S.D. Miss. Dec. 16, 2013) (citing *Twombly*, 550 U.S. at 556).

10

Nevertheless, Defendant argues that even if its conduct meets the willfulness standard, Plaintiff's claim still fails because its "interpretation of the FCRA was objectively reasonable." Doc. #35 at 18. While that argument may ultimately carry weight, the Court cannot resolve at this stage the factual disputes surrounding the purpose of Defendant's inquiries. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 597 (S.D. Tex. 2003) (quoting *Griffin v. PaineWebber Inc.*, 84 F. Supp. 2d 508, 513 (S.D.N.Y. 2000)) ("reasonableness in this context is 'not a question properly resolved on a motion to dismiss'").

The Court finds that Plaintiff is entitled to "an opportunity to conduct discovery and present evidence to support" his allegations. *Click v. Gen. Motors LLC.*, No. 2:18-CV-00455, 2020 WL 3118577, at *8 (S.D. Tex. Mar. 27, 2020). Thus, the Court finds that Plaintiff has plausibly alleged willful conduct sufficient to survive dismissal.

## IV.    Conclusion

In conclusion, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Doc. #35. Specifically, the Motion to Dismiss is GRANTED with respect to Plaintiff's claim for negligent noncompliance, as Plaintiff has failed to allege actual damages. However, the Motion to Dismiss is DENIED with respect to Plaintiff's claim for willful noncompliance, as the Court finds that Plaintiff has sufficiently pled facts to support a willful violation claim.

It is so ORDERED.

**SEP 3 0 2025**

Date

The Honorable Alfred H. Bennett
United States District Judge

11